UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE ABNET, et al.,

    Plaintiffs,

v.

THE COCA-COLA COMPANY; THE
MINUTE MAID COMPANY; and
COCA-COLA NORTH AMERICA,

    Defendants.
                                    /

File No. 1:10-cv-481

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This case is before the Court on Defendants' motion to dismiss Plaintiffs' first amended complaint. Defendants move that the entire first amended complaint be dismissed for failure to meet minimal pleadings standards, and alternatively that Counts II, IV, VI, and VII of the first amended complaint be dismissed for failure to state a claim upon which relief may be granted. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

### I.

Unless otherwise indicated, the following facts and allegations are taken from Plaintiffs' first amended complaint.

The Coca-Cola company owns and operates a fruit juice and fruit drink processing facility (the "Minute Maid Facility") located at 38279 Red Arrow Highway, Paw Paw, Michigan. Equipment at the Minute Maid Facility requires periodic cleaning and sanitizing,

which produces wastewater. This wastewater contains cleaning agents, salts, sugars, and other organic compounds. From 1979 to 2002, Coca-Cola sprayed this wastewater onto open fields adjacent to the Minute Maid Facility. The fields were owned by Coca-Cola, and the Michigan Department of Natural Resources and Environment ("MDNRE") issued a permit to Coca-Cola authorizing the spraying.

Plaintiffs allege that wastewater sprayed near the Minute Maid Facility depleted oxygen in the affected soil, creating conditions which caused naturally occurring heavy metals such as manganese, iron, lead and arsenic, to leach into groundwater. Plaintiffs allege that groundwater with significantly elevated levels of heavy metals flowed easterly from the Minute Maid Facility to Plaintiffs' properties. Plaintiffs claim a variety of harms resulting from the allegedly contaminated ground water, including property damage, loss in property value, and physical ailments such as gastrointestinal problems, developmental disabilities, kidney dysfunction, and nausea.

Although Coca-Cola had a permit issued by the MDNRE to spray wastewater, Plaintiffs allege that Coca-Cola's wastewater discharges exceeded permit limits. The excess spraying allegedly resulted in pooling, ponding and runoff of wastewater, and in contamination of groundwater. Plaintiffs contend that this violated Michigan's Natural Resources and Environmental Protection Act ("NREPA") and the terms of Coca-Cola's permit.

In September 2000, MDNRE and Coca-Cola entered into an Administrative Consent Order ("ACO") requiring Coca-Cola to phase out land application of wastewater from the Minute Maid Facility. In accordance with the ACO, Coca-Cola ceased spraying wastewater in December 2002. (Dkt. No. 11 at 3.) However, Plaintiffs allege that Coca-Cola has been dilatory in performing testing required by the ACO, and only recently conducted tests which indicate groundwater contamination. Although Coca-Cola has offered bottled water and/or replacement water supply to a number of Plaintiffs, (*id.*), Coca-Cola has not undertaken broader action to alter soil or groundwater conditions.

Plaintiffs now seek relief under seven causes of action: negligence and/or gross negligence (Count I); negligence per se (Count II); nuisance (Count III); trespass (Count IV); strict liability based on abnormally dangerous activity (Count V); Part 201 of NREPA (Count VI); and the Michigan Environmental Protection Act ("MEPA").[1]

## II.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). This requirement is to ensure that defendants are given "fair notice of what the . . . claim is and

---

[1] Defendants also seek a determination by the Court of the availability of future and exemplary damages. These questions are not central to determining whether Plaintiffs' claims survive Defendants' motion to dismiss, and the Court declines to decide them at this time. However, the parties are free to raise the issue by subsequent motion.

the grounds upon which it rests." *Id.* at 555. To survive a motion to dismiss, the plaintiff must allege facts that are sufficient, if true, to raise a right to relief above the speculative level and to state a claim that is "plausible" on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). In examining the sufficiency of a complaint, all well pleaded facts are taken as true, though a court need not accept as true "a legal conclusion couched as a factual allegation." *Id.* Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." *Id.* at 1950.

## III.

As an initial matter, Defendants believe that Plaintiffs' first amended complaint fails to meet minimal pleading standards. (Dkt. No. 11 at 8.) Defendants argue that the first amended complaint lacks detailed allegations or theories regarding matters such as how Defendants exceeded wastewater permit standards, or how elevated metal levels in groundwater caused injury, thereby rendering the entire complaint defective and subject to dismissal. (*Id.*)

The Court disagrees. Plaintiffs' first amended complaint adequately pleads factual allegations that, if true, are sufficient to raise a right to relief above speculative level. Plaintiffs allege that Defendants violated the terms of their permit by spraying excess

4

wastewater over a sustained period of time, that the excess spraying led to contamination of groundwater with heavy metals, and that the contaminated ground water inflicted property damage and physical ailments. (Dkt. No. 1 ¶¶ 10-40, 46-65, 74-84.) These are factual allegations which comport with pleading requirements under Rule 8.

However, Defendants' argument that Plaintiffs have failed to connect the generalized allegations in their complaint with specific harms to many individual Plaintiffs is well taken. Plaintiffs contend that they are free to jointly make factual allegations against the Defendants in a single complaint. (Dkt. No. 12 at 13.) While this is true, it does not relieve Plaintiffs of their obligation to provide Defendants with enough information to defend against the claims of each individual Plaintiff. Although there are multiple Plaintiffs, they have chosen to proceed in a normal lawsuit, and must therefore individually satisfy procedural burdens. Each Plaintiff need not separately allege identical facts regarding the behavior of Defendants. However, each individual Plaintiff *is* obligated to state how Defendants' alleged behavior gives him or her in particular a right to relief.

Part III of the first amended complaint does lay out allegations of harm related to some plaintiffs. However, as Defendants point out, several Plaintiffs do not allege any specific individual harm. Defendants have identified a number of Plaintiffs whose only allegation of harm is a bald statement that "[t]hese Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Coca-Cola that entered and continues to enter the property." (Dkt. No. 14 at 4.) This general statement does not allege

5

an actionable harm and does not provide Defendants with fair warning of the basis for a claim. Accordingly, these Plaintiffs will be dismissed.[2] [3] Eldon Peasley, who is a named Plaintiff but is not mentioned at all in the body of the complaint, will also be dismissed.

## III.

Defendants alternatively move to dismiss several individual counts of the complaint. Defendants move to dismiss Count II of the first amended complaint on grounds that negligence per se is not an independent cause of action under Michigan law.

The weight of Michigan authority supports Defendants' position that negligence per se is not an independent cause of action, but rather a burden-shifting mechanism within the theory of negligence. In *Zeni v. Anderson*, 397 Mich. 117, 137, 142 (1976), the Supreme Court of Michigan stated that "While some Michigan cases seem to speak of negligence per se as a kind of strict liability . . . the negligence per se approach just does not work." In lieu of retaining negligence per se as an independent strict liability cause of action, the Michigan Supreme Court held that "violation of a statute by plaintiff or defendant creates a prima facie

---

[2] Defendants move to dismiss thirty-one plaintiffs on these grounds. However, a number of these Plaintiffs are home owners. In paragraph 84 of the first amended complaint, Plaintiffs allege "[d]iminution in market value of their property for Plantffs with ownership interests." Although this allegation was not repeated for each Plaintiff, Plaintiffs specifically identified as property owners will not be dismissed for failure to state an individual harm.

[3] The following plaintiffs will be dismissed: Jeana and Julie Abnet (Dkt. No. 8 ¶ 10); Emmett and Tyler Dumas (¶ 13); Jason and Nathan Hagger (¶ 15); Keith, Michael and Joshua Henson (¶ 19); Jay Patrick Doll and Logan Michael Leonard (¶ 21); Kellie Nugteren and Kristen Allers (¶ 22); Sabrina Sinkewiz (¶ 28); Liesa Robarge and John Sinkewiz (¶ 29); Leslie Jones (¶ 30); Brittany Stump and Gavin Vegter (¶ 31); and James and Tyler Wressel (¶ 36).

case from which a jury may draw an inference of negligence." *Id.* at 122; *see also Klanseck v. Anderson Sales & Serv., Inc.*, 426 Mich. 78, 86 (1986) ("The fact that a person has violated a safety statute may be admitted as evidence bearing on the question of negligence . . . evidence of violation of a penal statute creates a rebuttable presumption of negligence."); *Candelaria v. BC Gen. Contractors, Inc.*, 236 Mich. App. 67, 82 (1999) ("Michigan does not subscribe to the doctrine of negligence per se."); *Brooks v. Starr Commonwealth*, Nos. 277469, 277539, 2009 WL 1507320, at *2 (Mich. App. May 28, 2009), *partially rev'd on other grounds*, 486 Mich. 910 (2010) ("[O]nce a duty is found, the violation of the statute may demonstrate prima facie evidence of negligence.").

In support of negligence per se as an independent cause of action, Plaintiffs cite one unpublished opinion, *Mesleh v. Young*, No. 262514, 2005 WL 2292657 (Mich. App. Sept. 20, 2005), which itself relies on *Thaut v. Finley*, 50 Mich. App. 611 (1973), a case decided prior to the Michigan Supreme Court's holdings in *Zeni* and *Klanseck*. The Court must follow the holdings of Michigan's highest court. Furthermore, Plaintiffs essentially concede the point by acknowledging that the effect of *Zeni* was to "abandon the former negligence per se rule and to replace it with one that allows a plaintiff to establish a prima facie case of negligence." (Dkt. No. 12 at 14.) Plaintiffs may offer evidence of statutory violations to establish a *prima facie* case under their claim of negligence (Count I), but Plaintiffs may not maintain a separate claim of negligence per se. Accordingly, Count II of the first amended complaint will be dismissed.

## IV.

Defendants move to dismiss Count IV of the first amended complaint on grounds that the first amended complaint fails to state a claim of trespass under Michigan law.

To recover under a theory of trespass in Michigan, a plaintiff must show "an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession. *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51 (1999).

In *Postma v. County of Ottawa*, the Michigan Court of Appeals stated that elements in groundwater should be considered intangible objects and that "contaminants in groundwater, even more so than dust that settles on land, simply becomes 'a part of the ambient circumstances of that space' and will not support an action in trespass." No. 243602, 2004 WL 1949317, at *9 (Mich. App. Sept. 2, 2004) (citing *Adams*, 237 Mich. App. at 69-70.) The *Postma* court also stated that "plaintiff's claim of trespass is without merit because this Court has recognized that one does not have ownership or exclusive possession over water beneath one's property." *Id.*; *see also Mich. Citizens for Water Conservation v. Nestle Waters N. Am., Inc.*, 269 Mich. App. 25, 67, 68 (recognizing the "interconnected nature of water sources"); *U.S. Aviex Co. v. Travelers Ins. Co.*, 125 Mich. App. 579, 590 (1983) ("[P]ercolating water is not owned by the owner of the land under which it flows . . . ."); Mich. Comp. Laws § 324.4101(z) (defining groundwater as "waters of the state").

Although Plaintiffs note that these statements in *Postma* are *dicta*,[4] they remain the most persuasive relevant indication of Michigan law before the Court. The Court must conclude that Michigan does not recognize claims of trespass where groundwater contamination is the only alleged injury. Accordingly, Count IV of the first amended complaint will be dismissed.

## V.

Defendants move to dismiss Count VI of the first amended complaint on grounds that the costs Plaintiffs seek to recover are not recoverable under Part 201.

Part 201 of the Natural Resources and Environmental Protection Act ("NREPA") requires a liable party to pay for "[a]ny other necessary costs of response activity incurred by any other person consistent with rules relating to the selection and implementation of response activity promulgated under this part." Mich. Comp. Laws § 324.20126a(1)(b). "Costs of response activity" has been statutorily defined to mean "all costs incurred in taking or conducting a response activity, including enforcement costs." § 324.20101(ff). A "response activity" is, in turn, "evaluation, interim response activity, remedial action, demolition, or the taking of other actions necessary to protect the public health, safety, or welfare, or the environment or the natural resources. Response activity also includes health assessments or health effect studies carried out under the supervision, or with the approval

---

[4] The trespass claim in *Postma* was denied as an initial matter because the plaintiff failed to produce evidence that the groundwater underneath his property was actually contaminated. 2004 WL 1949317, at *8.

of, the department of public health and enforcement actions related to any response activity." § 324.20101(ee).

Plaintiffs seek to recover the cost of bottled water for drinking and cooking, and for the replacement or repair of plumbing fixtures and other personal property. (Dkt. No. 12 at 19.) These costs are not of the kind contemplated by NREPA. Part 201 allows recovery of costs for response activities, which are activities taken to identify and remedy environmental or health hazards. It concerns response actions taken to protect "the environment or the natural resources," not reimbursement of private property damage. § 324.20101(ee). Furthermore, because Defendants are currently engaged in response activities pursuant to an Administrative Consent Order, only those actions required by the MDNRE are "response activities" under the NREPA. *See infra* Part VI.

The kinds of damages alleged by Plaintiffs are properly the subject of tort, not the NREPA. Costs which are not associated with "response activities" as defined by NREPA are not recoverable under Part II. Accordingly, Count VI of the first amended complaint will be dismissed.

## VI.

Defendants move to Dismiss Count VII of the first amended complaint, which seeks injunctive and declarative relief under the Michigan Environmental Protection Act ("MEPA"), Mich. Comp. Laws § 324.1701 *et seq.*, on grounds that courts do not have subject matter jurisdiction to review an ongoing environmental response directed by MDNRE.

Decisions by MDNRE are ultimately subject to judicial review. However, Part 201 of NREPA states that a court "does not have jurisdiction to review challenges to a response activity selected or approved by the [MDNRE]" until "after the completion of the response activity." Mich. Comp. Laws § 324.20137(4)(d).

Plaintiffs argue that they are not challenging MDNRE decisions, but are merely seeking additional response activities under MEPA, which provides citizens with the right to seek declaratory and equitable relief "for the protection of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction." Because they are not seeking to enjoin or directly interfere with the response activities mandated by MDNRE, Plaintiffs argue that the pre-enforcement bar to judicial review found in § 324.30137 does not apply. However, seeking injunctive relief requiring Defendants to perform additional response activities not required by MDNRE is tantamount to challenging the adequacy of MDNRE's decisions with respect to remedial action. Plaintiffs are alleging that the MDNRE hasn't done enough.

While MEPA provides an outlet for such a claim, Michigan courts have held that MEPA is subject to the pre-enforcement rule contained in § 324.30137. *Genesco, Inc. v. Michigan Dep't of Envtl. Quality*, 250 Mich. App. 45, 55-56 (2002) ("As applied, part 17 supplements, but does not supplant, the denial of subject-matter jurisdiction found in § 324.20137(4). The MDEQ [now MDNRE] must comply with part 17, but judicial review is delayed until after response activity is completed. . . . Accordingly, we conclude that the

11

trial courts properly dismissed Genesco's MEPA claim for lack of subject-matter jurisdiction pursuant to M.C.L. § 324.20137(4).").

Courts have no subject matter jurisdiction to review MDNRE decisions until the remedial activities deemed necessary by MDNRE have been completed. This extends to petitions for injunctive relief which would require additional remedial actions. Furthermore, Plaintiffs fail to address Defendants' argument that they are legally barred by § 324.20114(2) from undertaking any remedial action not authorized by the MDNRE while under the terms of an Administrative Consent Order. (Dkt. No. 11 at 12-13.) Accordingly, Count VII of the first amended complaint will be dismissed.

## VII.

For the reasons stated above, Counts II, IV, VI, and VII of the first amended complaint will be dismissed. Additionally, Plaintiffs Jeana Abnet, Julie Abnet, Emmett Dumas, Tyler Dumas, Jason Hagger, Nathan Hagger, Keith Henson, Michael Henson, Joshua Henson, Jay Patrick Doll, Logan Michael Leonard, Kellie Nugteren, Kristen Allers, Sabrina Sinkewiz, Liesa Robarge, John Sinkewiz, Leslie Jones, Brittany Stump, Gavin Vegter, James Wressel, Tyler Wressel, and Eldon Peasley will be dismissed.

Defendants' motion to dismiss is denied with respect to all remaining Plaintiffs and Counts I, III, and V. An order consistent with this opinion will be entered.

Dated: March 31, 2011                                /s/ Robert Holmes Bell
                                                     ROBERT HOLMES BELL
                                                     UNITED STATES DISTRICT JUDGE